# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **ANITA S. LIMA,** individually and on behalf of others similarly situated, <br><br> **Plaintiff,** <br><br> v. <br><br> **TRADER JOE'S COMPANY,** <br><br> **Defendant,** | ) ) ) ) ) ) ) **Civil Action No.** ) ) ) ) ) ) |

## CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiff brings suit on behalf of herself and persons similarly situated who purchased one or more boxes of "Trader Joe's Honey Nut O's," a breakfast cereal manufactured and marketed by Defendant.  By making false, deceptive, and misleading representations, and by omitting material information, Defendant's branding and packaging of "Trader Joe's Honey Nut O's" convey that honey – and not sugar - is its primary sweetener.  In truth, however, sugar (also referred to as white sugar) and brown sugar are the most prevalent sweeteners, and on information and belief the product contains only a miniscule amount of honey.  Plaintiff and all members were harmed by paying more to purchase the product than they would have been willing to pay had its honey content not been misrepresented by Defendant.

## PARTIES

1. Plaintiff Anita S. Lima is an individual who resides in Medford, Middlesex County, Massachusetts.,

2. Defendant Trader Joe's Company is a California corporation with a principal place of business at 800 South Shamrock Avenue, Monrovia, California 91018.

1

## JURISDICTION AND VENUE

3. The Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2)(A), the Class Action Fairness Act ("CAFA"), as the matter in controversy exceeds the sum of $5,000,000 (five million dollars) exclusive of interest and costs, and at least one member of the putative class is a citizen of a state different from Defendant. None of the exceptions set forth in 28 U.S.C. §1332(d) are applicable.

4. Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2) as a substantial part of the conduct complained of occurred in this district.

## STATEMENT OF FACTS

### A. The negative health effects of consuming excessive amounts of sugar are well-established.

5. In 2014, the National Institutes of Health cautioned: "experts agree that Americans eat and drink way too much sugar, and it's contributing to the obesity epidemic. Much of the sugar we eat isn't found naturally in food but is added during processing or preparation." https://newsinhealth.nih.gov/2014/10/sweet-stuff. The NIH noted further: "[s]everal studies have found a direct link between excess sugar consumption and obesity and cardiovascular problems worldwide." *Id.*

6. There has long been a consensus among doctors and nutritionists that "[e]ating too much sugar contributes to numerous health problems, including weight gain, Type 2 diabetes, dental caries, metabolic syndrome and heart disease, and even indirectly to cancer because of certain cancers' relationship to obesity." http://www.chicagotribune.com/lifestyles/health/ct-sugar-addictive-20171218-story.html

7. In addition, "there is emerging research that suggests high-sugar diets may increase the risk of developing [dementia]."  http://theconversation.com/yes-too-much-sugar-is-bad-for-our-health-heres-what-the-science-says-92030.

   **B. As part of a societal trend toward consuming healthier foods and natural foods, avoidance of added sugar has been and remains a significant consumer preference, with consumers strongly favoring honey as a sugar substitute.**

8. At least in part due to growing consumer awareness of health problems caused by excessive sugar consumption, in recent years consumers have shown a distinct preference for products with little or no added sugar as well as for "natural" products.

9. In August, 2016, an article in "Prepared Foods" magazine noted that "[o]ngoing concerns about obesity and sugar intake have driven interest in reduced sugar and diet drinks in recent years." https://www.preparedfoods.com/articles/118643-trends-in-sugar-reduction-and-natural-sweeteners.

10. As another observer of the food industry explained in May, 2017: "[h]ealth concerns and better educated consumers are propelling the demand for sugar reduction across food and beverage categories. . . Sugar reduction will be one of the top marketing claims prominently featured on products in the coming year. . ."  https://www.foodinsiderjournal.com/formulation-solutions/less-more-sugar-reduction-less-sodium-low-fodmaps-food-beverage.

11. Similarly, an article in the February 28, 2018, edition of "Food Business News" reported that "[s]peakers addressing consumer trends at the International Sweetener Colloquium in Orlando on February 13 said sugar avoidance was a macro trend 'that is here to stay and will only increase. ,. . "

12. The same article noted that "I.R.I. [Information Resources, Inc.] surveys show that 58% of consumers across generations are avoiding sugar. . . [and of] those avoiding sugar, 85% are doing so for health reasons and 58% for weight concerns."

13. The same article reported that surveys showed that "[c]onsumers rated honey at 73% 'better for you than sugar."

14. And, in 2018, "Prepared Foods" magazine noted survey findings that: (i) "93% of consumers consider honey to be a natural sweetener;" (ii) "58% of consumers with one or more children look for honey on the product label;" (iii) "60% of consumers between the ages of 18 and 34 look for honey on the product label; and (iv) about half of consumers would pay at least 5% more for food bars, ready-to-drink tea, and yogurt primarily sweetened with honey." https://www.preparedfoods.com/articles/118643-trends-in-sugar-reduction-and-natural-sweeteners

15. Referring to food products perceived as healthier, the Huffington Post reported that "[a]ccording to a 2015 Nielsen survey of 30,000 people, 90% of shoppers are willing to pay more for the added quality and benefits." https://www.huffingtonpost.com/brian-kennell/healthy-food-trends-drive_b_8222388.html.

16. Honey is a naturally occurring substance and, unlike sugar, has small amounts of nutrients such as vitamins, minerals, enzymes, and antioxidants. In addition, honey has a lower glycemic index than sugar, meaning that it causes slower fluctuations in blood glucose levels (often referred to as "blood sugar") and therefore in insulin levels as well. Rapid spikes of blood glucose levels lead to quick spurts of energy followed by sharp declines in energy characterized by tiredness, headaches, and difficulties in concentrating ("low blood sugar").

17. Based on the common marketplace perception that honey is healthier and more natural than sugar, consumers place a greater value on products that are sweetened with honey instead of sugar and are willing to pay a higher price for such products.

### C. Defendant's false, deceptive and misleading branding and packaging of "Trader Joe's Honey Nut O's."

18. "Trader Joe's Honey Nut O's" cereal (sometimes referred to herein as the "Product") is sold to the public in stores and on-line in rectangular boxes containing 13.5 ounces of cereal.

19. The front of each "Trader Joe's Honey Nut O's" cereal box is identical:

    (a) The name "HONEY NUT O's" in bold letters fills the top third of the box, with "HONEY" being the most prominent word.

    (b) Directly beneath the product name is a wooden honey dipper covered with and dripping honey over a bowl filled with "Honey Nut O's" cereal.

    (c) The words "HONEY NUT O's" and the honey dipper are silhouetted above a honeycomb pattern.

    (d) Other than printing and certain graphics, the entire box is honey-colored.

20. The front of a "Trader Joe's Honey Nut O's" box is pictured here:



21. Thus, the branding and packaging of "Trader Joe's Honey Nut O's" convey the clear message that honey, and not sugar, is the primary sweetener. Indeed, even the description of the Product's ingredients on the left side of the box prioritizes honey over sugar: "This crunchy, sweet and nutty cereal is made from toasted whole grain oats, almonds, honey and sugar."

22. The sweeteners contained in "Trader Joe's Honey Nut O's" cereal, in order of weight, are:

(a) Sugar (often referred to as "white" or "regular" sugar), which is made from juice

    extracted from sugar beet and/or sugar cane plants that goes through multiple stages of processing and refinement;

  (b) Brown sugar, which is a combination of white sugar and molasses;

  (c) Honey, which is made by bees from the nectar of flowering plants.

23. Thus, honey is the least prevalent sweetener by weight in the cereal, following sugar and brown sugar. Honey also is the only non-refined sweetener in the cereal.

24. Moreover, on information and belief, the amount of honey in "Trader Joe's Honey Nut O's" is miniscule.

25. A product branded "Honey Nut O's" that displays cereal being covered with honey over a honeycomb background conveys to a reasonable consumer that honey is the primary sweetener. Unfortunately for consumers, that is not true here. Rather, sugar and brown sugar are the primary sweeteners, not honey. The deception is compounded by the fact that there is no prominent language or other indication on the front of the packaging that sugar and brown sugar are the primary sweeteners or, indeed, that they are present at all.

26. The FDA recognizes that product names such as the one at issue here are misleading when they suggest some, but not all, of the key ingredients:

> The labeling of a food which contains two or more ingredients may be misleading by reason (among other reasons) of the designation of such food in such labeling by a name which includes or suggests the name of one or more but not all such ingredients, even though the names of all such ingredients are stated elsewhere in the labeling.

*See* 21 C.F.R. § 101.18(b).

27. The FDA has also promulgated a regulation requiring that a food product's name disclose the amount of honey under the circumstances present here:

> The common or usual name of a food shall include the percentage(s) of any characterizing ingredient(s) or component(s) when the proportion of such

7

    ingredient(s) or component(s) in the food has a material bearing on price or consumer acceptance or when the labeling or the appearance of the food may otherwise create an erroneous impression that such ingredient(s) or component(s) is present in an amount greater than is actually the case.

    *See* 21 C.F.R. §102.5(b),

28. Defendant's branding and packaging of "Trader Joe's Honey Nut O's" are designed to – and do – deceive, mislead, and defraud consumers.

29. Defendant's false, deceptive, and misleading branding and packaging enabled Defendant to sell more boxes of "Trader Joe's Honey Nut O's" cereal than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

    **D.  Facts pertaining to Plaintiff**

30. Within the time frame encompassed by this complaint Plaintiff purchased approximately five boxes of "Trader Joe's Honey Nut O's" for her daughter.

31. Plaintiff purchased the Product in part because, based on Defendant's branding and packaging, she believed that the cereal was primarily sweetened with hone and not sugar or other refined sweeteners.

32. During the time when she was purchasing the Product, Plaintiff did not take steps to verify whether honey (and not sugar) was the primary sweetener as was conveyed on the front of the packaging in bold, prominent letter.  A reasonable consumer such as Plaintiff would not have considered it necessary to verify the clear message conveyed by Defendant's branding and packaging of the Product.

33. Plaintiff eventually learned that Defendant's representations concerning the Product were not true, and made no further purchases of the Product.

34. Plaintiff was economically harmed by Defendant's false, deceptive, and misleading representation that its cereal was primarily sweetened with honey and not sugar. The value of the cereal that Plaintiff actually purchased was less than the value of the Product as misrepresented by Defendant.

## CLASS ACTION ALLEGATIONS

35. Plaintiff brings this case as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of herself and a proposed class (the "Nationwide Class") defined as follows:

> **The Nationwide Class**. All persons who, on or after December 19, 2012, purchased the Product for personal, family, or household purposes in the United States.
>
> Plaintiff asks the Court to adjudicate all remedies through the Nationwide Class.

36. Additionally, Plaintiff brings this case as a class action pursuant to Rule 23(a) and (b)(2) on behalf of themselves and a proposed class (the "Injunctive Relief Class") defined as follows:

> **The Injunctive Relief Class.** All persons who, on or after December 19, 2015, purchased the Product for personal, family or household purposes in the United States.
>
> Plaintiff asks the Court to adjudicate only liability, declaratory relief, and injunctive relief through the Injunctive Relief Class. The Injunctive Relief Class does not seek any form of monetary relief.

37. Alternatively, Plaintiff brings this case as a class action pursuant to Rule 23(a) and (b)(3) on behalf of herself and a proposed subclass (the "Multistate Class") defined as follows:

> **The Multistate Class.** All persons who, within the relevant limitations periods, purchased the products for personal, family, or household purposes in Alaska, Arizona, Colorado, Connecticut, Delaware, the District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Kansas, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, South Dakota, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and Wyoming.

Plaintiff asks the Court to adjudicate all remedies through the Multistate Class.

38. There are likely millions of class members in each class. Each class is sufficiently numerous such that joinder is impracticable.

39. There are issues of law and fact common to each class, which common issues predominate over any issues peculiar to individual class members. The principal common issues are: whether "Trader Joe's Honey Nut O's" was sold to the public with the branding and packaging as alleged; whether Defendant's branding and packaging conveyed to the reasonable consumer that honey, and not sugar, was the primary sweetener of the Product; whether Defendant was unjustly enriched; whether Defendant's branding and packaging created an express warranty; whether the Product as branded and packaged failed to conform to Defendant's express warranty; whether class members were harmed as alleged herein and, if so, the proper measure of damages; and whether class members are entitled to injunctive relief and, if so, the proper nature and scope of such relief.

40. Plaintiff's claims are typical of the claims of class members. Plaintiff and all class members purchased a product that was uniformly branded and packaged to mislead, deceive, and defraud consumers. All claims are based on the same legal theories, and all arise from the same course of conduct.

41. Plaintiff will fairly and adequately protect the interests of all class members. Plaintiff is committed to a vigorous and successful prosecution of this action, are familiar with the legal and factual issues involved, and have retained counsel experienced in the litigation of consumer rights cases, including false advertising class actions. Neither Plaintiff nor counsel have any interest or conflict that might cause them to not vigorously pursue this action.

42. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since: (a) the economic harm suffered by any individual class member is likely not substantial, and therefore, the expense and burden of individual litigation would be economically unfeasible; and (b) the prosecution of separate lawsuits by individual class members would entail the risk of inconsistent and conflicting adjudications that could establish conflicting standards of conduct for Defendant; and (c) there will be no unusual or extraordinary management difficulties in administering this case as a class action.

43. Defendant has acted on grounds generally applicable to the class with respect to the matters alleged herein, thereby making the relief sought appropriate with respect to the class as a whole.

## COUNT I

## UNJUST ENRICHMENT

**(on behalf of Plaintiff and the Nationwide Class)**

44. The allegations of all preceding paragraphs are incorporated herein as if fully set forth,

45. Plaintiff and class members were harmed, and Defendant was enriched, due to Defendant's unlawful conduct as described herein. By branding and packaging "Honey Bunches of Oats" cereals to convey the false, deceptive, and misleading message that they are sweetened primarily or significantly with honey, Plaintiff and class members paid more to purchase the Products than they would have but for Defendant's misconduct.

46. Defendant is liable to Plaintiff and class members for monies that it wrongfully and unjustly obtained from them in the form of premium prices paid for the Products.

   WHEREFORE, Plaintiffs pray that this Honorable Court enter judgment:

   (a) Awarding them and class members monetary damages;
   (b) Awarding interest on all damages awarded;
   (c) Awarding costs and reasonable attorney's fees;
   (d) Awarding such further relief as shall be just and proper.

## COUNT II

## VIOLATIONS OF STATE CONSUMER PROTECTION STATUTES

**(on behalf of Plaintiff and the Multistate Class)**

47. Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

48. Defendant's misrepresentations and omissions in the branding and packaging of the Products were unfair and/or deceptive, thus violating the following consumer protection statutes which alternatively provide a basis for redress to Plaintiffs:

   a. **Alaska:** Defendant's practices were and are in violation of Alaska's Unfair Trade Practices and Consumer Protection Act, Alaska Stat. § 45.50.471, *et seq.*

   b. **Arizona:** Defendant's practices were and are in violation of Arizona's Consumer Fraud Act, Ariz. Rev. Stat. Ann. §§ 44-1521, *et seq*.

   c. **Arkansas:** Defendant's practices were and are in violation of Arkansas Code Ann. § 4-88-101, *et seq.*

   d. **Colorado**: Defendant's practices were and are in violation of Colorado's Consumer Protection Act, Colo. Rev. Stat. §§ 61-1-101, *et seq.*

   e. **Connecticut:** Defendant's practices were and are in violation of Connecticut's Gen. Stat. § 42-110a, *et seq.*

   f. **Delaware:** Defendant's practices were and are in violation of Delaware's Consumer Fraud Act, Del. Code Ann. tit. 6, § 2511, *et seq.* and the Deceptive Trade Practices Act, Del. Code Ann. tit. 6, § 2531, *et seq.*

g. **District of Columbia:** Defendant's practices were and are in violation of the District of Columbia's Consumer Protection Act, D.C. Code § 28-3901, *et seq.*

h. **Florida:** Defendant's practices were and are in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*

i. **Hawaii:** Defendant's practices were and are in violation of the Hawaii's Uniform Deceptive Trade Practices Act, Haw. Rev. Stat. § 481A-1, *et seq.* and Haw. Rev. Stat. § 480-2.

j. **Idaho:** Defendant's practices were and are in violation of Idaho's Consumer Protection Act, Idaho Code Ann. § 48-601, *et seq.*

k. **Illinois:** Defendant's acts and practices were and are in violation of Illinois' Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/2; and Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/2.

l. **Indiana:** Defendant's practices were and are in violation of Indiana's Deceptive Consumer Sales Act, Ind. Code Ann. § 24-5-0.5-1, *et seq.*

m. **Kansas:** Defendant's practices were and are in violation of Kansas's Consumer Protection Act, Kat. Stat. Ann. § 50-623, *et seq.*

n. **Kentucky:** Defendant's practices were and are in violation of Kentucky's Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.110, *et seq.*

o. **Maryland:** Defendant's practices were and are in violation of Maryland's Consumer Protection Act, Md. Code Ann. Com. Law § 13-101, *et seq.*

p. **Massachusetts:** Defendant's practices were and are in violation of Massachusetts's Consumer Protection Act, Mass. Gen. Laws. c. 93A, §1 *et seq.*

q. **Michigan:** Defendant's practices were and are in violation of Michigan's Consumer Protection Act, Mich. Comp. Laws Ann. § 445.901, *et seq.*

r. **Minnesota:** Defendant's practices were and are in violation of Minnesota's Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq.* and the Unlawful Trade Practices law, Minn. Stat. § 325D.09, *et seq.*

s. **Missouri:** Defendant's practices were and are in violation of Missouri's Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*

t. **Nebraska:** Defendant's practices were and are in violation of Nebraska's Consumer Protection Act, Neb. Rev. Stat. § 59-1601, *et seq.* and the Uniform Deceptive Trade Practices Act, § 87-302, *et seq.*

u. **Nevada:** Defendant's practices were and are in violation of Nevada's Deceptive Trade Practices Act, Nev. Rev. Stat. Ann. §§ 598.0903 and 41.600.

v. **New Hampshire:** Defendant's practices were and are in violation of New Hampshire's Regulation of Business Practices for Consumer Protection, N.H. Rev. Stat. Ann. § 358-A:1, *et seq.*

w. **New Jersey:** Defendant's practices were and are in violation of New Jersey's Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et seq.*

x. **New Mexico:** Defendant's practices were and are in violation of New Mexico's Unfair Practices Act, N.M. Stat. Ann. § 57-12-1, *et seq.*

y. **North Dakota:** Defendant's practices were and are in violation of North Dakota's Unlawful Sales or Advertising Practices law, N.D. Cent. Code § 51-15-01, *et seq.*

z. **Ohio:** Defendant's practices were and are in violation of Ohio's Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.01, *et seq.* and Ohio's Deceptive Trade Practices Act. Ohio Rev. Code Ann. § 4165.01, *et seq.*

aa. **Oklahoma:** Defendant's practices were and are in violation of Oklahoma's Consumer Protection Act, Okla. Stat. Ann. tit. 15 § 751, *et seq.*, and Oklahoma's Deceptive Trade Practices Act, Okla. Stat. Ann. tit. 78 § 51, *et seq.*

bb. **Oregon:** Defendant's practices were and are in violation of Oregon's Unlawful Trade Practices law, Or. Rev. Stat. § 646.605, *et seq.*

cc. **Rhode Island:** Defendant's practices were and are in violation of Rhode Island's Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1-1, *et seq.*

dd. **South Dakota:** Defendant's practices were and are in violation of South Dakota's Deceptive Trade Practices and Consumer Protection Act, S.D. Codified Laws § 37-24-1, *et seq.*

ee. **Utah:** Defendant's practices were and are in violation of Utah's Consumer Sales Practices Act, Utah Code Ann. § 13-11-1, *et seq.*, and Utah's Truth in Advertising Law, Utah Code Ann. § 13-11a-1, *et seq.*

ff. **Vermont:** Defendant's practices were and are in violation of Vermont's Consumer Fraud Act, Vt. Stat. Ann. tit. 9 § 2451, *et seq.*

    gg. **Washington:** Defendant's practices were and are in violation of Washington Consumer Protection Act, Wash. Rev. Code Ann. § 19.86, *et seq*.

    hh. **Wisconsin:** Defendant's practices were and are in violation of Wisconsin's Consumer Act, Wis. Stat. §421.101, *et seq*.

49. Defendant violated the aforementioned consumer protection laws by misrepresenting that the Products are sweetened primarily (or at least significantly) with honey, both through affirmative misrepresentations and omissions of material fact.

50. Contrary to Defendant's misrepresentations and omissions, the Products are sweetened primarily with sugar and other processed substances, with honey present only in miniscule amounts, a fact not clearly or conspicuously disclosed to consumers.

51. Defendant made its false, deceptive, and misleading representations and omissions willfully, wantonly, and with reckless disregard for the truth.

52. Defendant's misrepresentations and omissions were material to Plaintiffs' and class members' decisions to pay a premium for the Products.

53. On October 31, 2018, Plaintiff – through counsel – sent to Defendant via certified mail, return receipt requested, a demand for class relief pursuant to M.G.L. c. 93A, §9, which demand reasonably described the acts and practices complained of and the injuries suffered.

54. Defendant received Plaintiff's demand but failed to make a reasonable written tender of class relief within thirty (30) days of receipt (as extended by agreement).

55. Defendant's failure to make a reasonable and timely written tender of class relief was in bad faith with knowledge or reason to know that its conduct violated M.G.L. c. 93A, §2.

56. Pursuant to the aforementioned statutes, Plaintiffs and class members are entitled to recover compensatory damages, restitution, punitive and special damages (including but not limited to treble damages), reasonable attorneys' fees and costs and injunctive or declaratory relief as deemed appropriate or permitted pursuant to the relevant statutes.

## COUNT III

## VIOLATIONS OF STATE EXPRESS WARRANTY STATUTES

### (on behalf of Plaintiff and the Multistate Class)

57. Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

58. Through its branding and packaging, Defendant described the Products as being sweetened primarily or significantly with honey, and this description was part of the basis of the bargain between Defendant and each purchaser. Reasonable consumers would not have paid as much to purchase the Products had the Products been described accurately.

59. Pursuant to the Uniform Commercial Code as adopted in the following jurisdictions, Defendant's description of the Products created an express warranty that the cereals were primarily or, at a minimum, significantly sweetened with honey, which statutes provide Plaintiffs with an alternative means of redress: Alaska, Arizona, Colorado, Connecticut, Delaware, the District of Columbia, Florida, Georgia, Hawaii, Illinois, Indiana, Kansas, Louisiana, Massachusetts; Michigan, Minnesota, Missouri, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Pennsylvania, South Carolina, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and Wyoming.

60. The Products do not conform to the express warranty created by Defendant's description of them.

61. Plaintiffs and class members were injured by Defendant's breach of its express warranty because they paid more to purchase the Products than they would have been willing to pay had the Products conformed to the warranty.

WHEREFORE, Plaintiffs pray that this Honorable Court enter judgment:

(a) Awarding them and class members monetary damages;
(b) Awarding interest on all damages awarded;
(c) Awarding costs and reasonable attorney's fees;
(d) Awarding such further relief as shall be just and proper.

## JURY TRIAL DEMAND

Plaintiffs demand a jury trial on all causes of action so triable.

ANITA S. LIMA, Plaintiff, by:

/s/Kenneth D. Quat
BBO#408640
**QUAT LAW OFFICES**
929 Worcester Rd.
Framingham Massachusetts 01701
508-872-1261
*ken@quatlaw.com*

/s/Michael R. Reese (pro hac vice pending)
/s/Carlos F. Ramirez (pro hac vice pending)
**REESE LLP**
100 West 93rd St., 16th Floor
New York, New York 10025
212-643-0500
*mreese@reesellp.com*
*cramirez@reesellp.com*

*Counsel for Plaintiff and the Proposed Classes*